UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARCUS TAYLOR, individually and on behalf of all those similarly situated,

    Plaintiff,

  v.

TA OPERATING, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,

    Defendants.

No. 2:22-cv-00947 WBS DMC

MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION

----oo0oo----

    This is just the most recent of many cases in which the court has been called upon to determine whether an arbitration agreement between an employer and its employee is enforceable. Understandably, employers often include arbitration clauses in their written employment agreements with their employees. The fundamental value of arbitration is that it saves the time and expense of extended litigation for both sides. In the context of the employer-employee relationship (if a relationship still

1

1   exists) it also serves to minimize the disruption of business and
2   the acrimony of litigation.  Parties in arbitration further
3   benefit from the experience and expertise of an arbitrator who is
4   a subject-matter expert rather than submitting to the
5   uncertainties associated with a jury trial.

6            In this case, rather than take advantage of the
7   arbitration provisions in his employment agreement, plaintiff
8   Marcus Taylor seeks to pursue the more costly, time consuming,
9   and rancorous process of litigating his employment dispute in
10  federal court.  Accordingly, he has initiated this putative class
11  action against defendant TA Operating, LLC, alleging wage and
12  hour violations under the California Labor Code and California
13  Business and Professions Code.  (See Compl. (Docket No. 1-1 at 5-
14  19) at 2.)  Defendant now moves to compel plaintiff to arbitrate
15  his claims and seeks dismissal of the action.  (Docket No. 19.)

16  I.   Factual and Procedural Background

17           Defendant, an owner and operator of truck stops and
18  convenience stores, employed plaintiff as a non-exempt assistant
19  general manager from on or around August 16, 2021 to January 13,
20  2022. (Decl. of Marcus Taylor ("Taylor Decl.") (Docket No. 21-2)
21  ¶ 3; Decl. of Claudia Ratica ("Ratica Decl.") (Docket No. 19-3)
22  ¶¶ 3-4.)  At the beginning of his employment with defendant,
23  plaintiff signed a Mutual Agreement to Resolve Disputes and
24  Arbitrate Claims ("Agreement").  (See Taylor Decl. ¶ 4; Ratica
25  Decl. ¶ 5.)

26           The Agreement provides that if a dispute cannot be
27  resolved through defendant's internal grievance process, it must
28  be arbitrated.  (Ex. B to Ratica Decl. ("Agreement") (Docket No.

19-3 at 14-26) at 1.)  Pursuant to the Agreement, defendant will pay all arbitration fees.  (<u>Id.</u> at 3.)  Defendant will not, however, pay associated costs including attorneys' fees and costs incurred in responding to discovery (though the arbitrator can award such costs and fees in his decision).  (<u>Id.</u> at 3-4.)  The Agreement provides that employees waive the right to bring class or collective claims and the right to a jury trial in the event the Agreement is found unenforceable.  (<u>Id.</u> at 4.)  A choice of law provision states that disputes regarding enforceability of the Agreement will be determined under Delaware law, while the substance of the claim will be governed by California law.  (<u>Id.</u>)  The Agreement also contains a delegation clause, which provides that "all challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement."  (<u>Id.</u> at 4.)

Defendant previously moved to compel arbitration in two cases that involved the precisely same Agreement.[1]  In <u>Chandler v. TA Operating LLC</u>, Judge Troy L. Nunley granted defendant's motion to compel arbitration, finding that the delegation clause was enforceable, and that even if the delegation clause was unconscionable, the Agreement as a whole was not.  No. 2:20-cv-02091 TLN DMC, 2022 WL 597581, at *2 (E.D. Cal. Feb. 28, 2022).  In <u>Holley-Gallegly v. TA Operating LLC</u>, Judge Jesus G. Bernal reached a different result and denied defendant's motion to

---

[1]    While these district court decisions involved the same arbitration agreement, they are not binding on this court.

3

1   compel arbitration, finding that the Agreement--including the
2   choice of law and waiver of jury trial provisions--was
3   unconscionable and therefore the delegation clause was
4   unenforceable.  <u>See</u> No. EDCV-22-593 JGB SHK, 2022 WL 9959778, at
5   *3-5 (C.D. Cal. Sept. 16, 2022).

6   II.  <u>Discussion</u>

7           The parties do not dispute that the Federal Arbitration
8   Act ("FAA") governs the instant Agreement.  (<u>See</u> Def.'s Mem. in
9   Supp. of Mot. to Compel ("Def.'s Mem.") (Docket No. 19-1) at 10;
10  Pl.'s Opp'n (Docket No. 21) at 9.)  The FAA provides that a
11  written provision in a "contract evidencing a transaction
12  involving commerce to settle by arbitration a controversy
13  thereafter arising out of such contract . . . shall be valid,
14  irrevocable, and enforceable, save upon such grounds as exist at
15  law or in equity for the revocation of any contract."  9 U.S.C.
16  § 2.  Because arbitration is a matter of contract, "the central
17  . . . purpose of the FAA is to ensure that private agreements to
18  arbitrate are enforced according to their terms."  <u>Stolt-Nielsen</u>
19  <u>S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 682 (2010)
20  (internal quotation marks omitted).  <u>See also</u> <u>Perry v. Thomas</u>,
21  482 U.S. 483, 490 (1987) (under the FAA, arbitration agreements
22  "must be rigorously enforced") (internal quotation marks omitted,
23  alterations adopted).

24          The FAA "leaves no place for the exercise of discretion
25  by a district court, but instead mandates that district courts
26  shall direct the parties to proceed to arbitration on issues as
27  to which an arbitration agreement has been signed."  <u>Dean Witter</u>
28  <u>Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).  "[A]s a matter

1   of federal law, any doubts concerning the scope of arbitrable

2   issues should be resolved in favor of arbitration, whether the

3   problem at hand is a construction of the contract language itself

4   or an allegation of waiver, delay, or like defense to

5   arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const.

6   Corp., 460 U.S. 1, 24-25 (1983); see also Poublon v. C.H.

7   Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017).

8         Upon a showing that a party has failed to comply with a

9   valid arbitration agreement, the district court must issue an

10  order compelling arbitration. See Cohen v. Wedbush, Noble Cooke,

11  Inc., 841 F.2d 282, 285 (9th Cir. 1988). "[T]he FAA limits

12  courts' involvement to determining (1) whether a valid agreement

13  to arbitrate exists and, if it does, (2) whether the agreement

14  encompasses the dispute at issue." Cox v. Ocean View Hotel

15  Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation

16  marks omitted). Ordinarily, courts may "refuse to enforce

17  arbitration agreements 'upon such grounds as exist at law or in

18  equity for the revocation of any contract.'" Epic Sys. Corp. v.

19  Lewis, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). Such

20  "generally applicable contract defenses" include fraud, duress,

21  or unconscionability, as determined by state law. See AT&T

22  Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011).

23        Defendant seeks to compel arbitration not only of the

24  underlying wage and hour claims, but also the threshold issue of

25  whether those claims are subject to arbitration under the

26  Agreement. (See Def.'s Mem.) Plaintiff argues that he cannot be

27  compelled to arbitrate because both the Agreement and the

28  delegation clause are unconscionable and therefore unenforceable.

5

(See Pl.'s Opp'n at 16-18.)

     A.   Plaintiff's Substantive Unconscionability Arguments Lack Merit

"Unconscionability has both a 'procedural' and a 'substantive' element." Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000). "Both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Id. However, "they need not be present in the same degree." OTO, LLC v. Kho, 8 Cal. 5th 111, 125 (2019). "A procedural unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." Id. at 126. "A substantive unconscionability analysis examines the fairness of a contract's terms." Id. at 129. The concern is with "terms that are unreasonably favorable to the more powerful party." Id. at 130.

Plaintiff first contends that the entire agreement is procedurally unconscionable because it was a condition of employment and plaintiff had no opportunity to negotiate the terms. (Pl.'s Opp'n at 10-11.) Under these circumstances, the Agreement is a contract of adhesion. See Armendariz, 24 Cal. 4th at 115 (finding that arbitration agreement that was "imposed on employees as a condition of employment" with "no opportunity to negotiate" was adhesive); OTO, LLC, 8 Cal. 5th at 126 ("Arbitration contracts imposed as a condition of employment are typically adhesive.").

However, because "adhesion establishes only a 'low' degree of procedural unconscionability," Davis v. Kozak, 53 Cal. App. 5th 897, 907 (2020), plaintiff must demonstrate a high level

1  of substantive unconscionability.  See Poublon, 846 F.3d at 1261

2  ("if an employee must sign a non-negotiable employment agreement

3  as a condition of employment but there is no other indication of

4  oppression or surprise, then the agreement will be enforceable

5  unless the degree of substantive unconscionability is high")

6  (internal quotation marks and citations omitted); Armendariz, 24

7  Cal. 4th at 114 ("the more substantively oppressive the contract

8  term, the less evidence of procedural unconscionability is

9  required to come to the conclusion that the term is

10  unenforceable, and vice versa").

11  Plaintiff next argues that the Agreement is so

12  permeated by substantive unconscionability that it is

13  unenforceable in its entirety.  (Pl.'s Opp'n at 16.)  In response

14  to the court's request, counsel for plaintiff has provided a list

15  of each of the provisions of the Agreement that plaintiff

16  contends is substantively unconscionable.  Specifically,

17  plaintiff argues that the following provisions are

18  unconscionable: (1) the waiver of jury trial, (2) the scope of

19  the arbitrator's ability to award attorneys' fees and costs to

20  the prevailing party, (3) the allocation of attorneys' fees and

21  costs between the parties, (4) the limitations on discovery, (5)

22  the requirement that plaintiff decide at the beginning of

23  arbitration whether to be represented by a lawyer, and (6) the

24  choice of Delaware law.

25  One can understand how an attorney who wants to turn

26  the plaintiff's claims into a class action would prefer to

27  litigate those claims in court.  But it is hard to understand how

28  any reasonable employee could really think any of these

1  provisions, individually or collectively, are unconscionable or

2  unfair.  Although it is not necessary to this decision, the court

3  will discuss each of the assailed provisions in turn.

4             i.   Waiver of Jury Trial

5             The term at issues provides: "IF THIS AGREEMENT IS

6  DETERMINED TO BE UNENFORCEABLE ANY CLAIMS BETWEEN YOU AND THE

7  COMPANY RELATED TO YOUR EMPLOYMENT SHALL BE SUBJECT TO A NON-JURY

8  TRIAL."  (Agreement at 5.)  This term would apply only if

9  arbitration were not compelled; as defendant points out, if

10 arbitration is compelled, the provision will be moot.  (Def.'s

11 Reply Mem. (Docket No. 23 at 2-12) at 2.)  As a result, this term

12 is not relevant to whether the arbitration agreement is

13 unconscionable.

14             Even if this term were unconscionable, it could be

15 easily severed and thus would not warrant finding the entire

16 agreement unconscionable.  See Armendariz, 24 Cal. 4th at 121-

17 122, 125 (courts should typically sever unconscionable

18 provisions, but can decline to do so and instead find an entire

19 contract unconscionable where it is so "permeated by an unlawful

20 purpose" that a court would be unable to "remove the

21 unconscionable taint from the agreement" by severing a specific

22 provision).

23             Further, plaintiff has not demonstrated that the waiver

24 of jury trial, if unconscionable, was a "'deliberately illegal'"

25 provision "drafted in bad faith" such that severance would be

26 inappropriate.  See Lim v. TForce Logistics, LLC, 8 F.4th 992,

27 1005-06 (9th Cir. 2021) (quoting Armendariz, 24 Cal. 4th at 124

28 n.13).

8

1          ii.  <u>Recovery of Costs and Attorneys' Fees</u>

2          The Agreement provides:

3       The arbitrator may award reasonable attorneys' fees and
      expenses only if expressly required by an applicable statute
4       or law. In the absence of such an express requirement, the
      arbitrator may award attorneys' fees and expenses to either
5       party only if the arbitrator determines that a failure to
      award attorneys' fees and expenses would be unconscionable
6       under applicable law.

7 (Agreement at 3-4.)

8          This provision mirrors the "American Rule," according

9 to which "attorneys' fees are not ordinarily recoverable by the

10 prevailing litigant in federal litigation in the absence of

11 statutory authorization." <u>Alyeska Pipeline Serv. Co. v.</u>

12 <u>Wilderness Soc'y</u>, 421 U.S. 240, 240 (1975); <u>see also</u> <u>Bird v.</u>

13 <u>Oregon Comm'n for the Blind</u>, 22 F.4th 809, 815 (9th Cir. 2022),

14 <u>cert. denied sub nom.</u> <u>Bird v. Oregon Comm'n for Blind</u>, No. 21-

15 1583, 2022 WL 4652118 (U.S. Oct. 3, 2022). If this provision

16 were unconscionable, so would be the practice in most courts

17 across the United States.

18          Absent statutory authorization, federal courts may

19 award attorneys' fees only when "overriding considerations of

20 justice seem to compel such a result" under an established

21 exception. <u>Dir., Off. of Workers' Comp. Programs, U.S. Dep't of</u>

22 <u>Lab. v. Robertson</u>, 625 F.2d 873, 879 (9th Cir. 1980) (internal

23 quotation marks and citation omitted). California law similarly

24 applies the American Rule. <u>See</u> Cal. Civ. Proc. Code § 1021.

25 Plaintiff has not cited any authority indicating that a more

26 permissive standard concerning attorneys' fees should apply in

27 arbitration than would apply in federal or state court.

28          At any rate, the labor laws underlying plaintiff's

1 claims <u>do</u> require that an employer pay a prevailing employee's

2 attorneys' fees.  <u>See</u> Compl.; Cal. Lab. Code §§ 218.5, 226.  If

3 plaintiff prevails at arbitration, the arbitrator will be

4 required to award attorneys' fees in accordance with the

5 California statutes applicable to plaintiff's substantive claims.

6                    iii. <u>Allocation of Costs and Attorneys' Fees</u>

7          The first paragraph at issue provides:

8          The Company will pay 100% of the Arbitration Firm's fees as
           well as the arbitrator's fees and expenses.  The Company
9          also will pay (or reimburse you) for 100% of any filing fees
           that the Arbitration Firm may charge to initiate
10         arbitration.  Each party shall otherwise bear its own costs
           and fees associated with the arbitration including, but not
11         limited to, attorneys' fees and the costs and fees of
           responding to discovery requests.
12
13 (Agreement at 3.)

14         The court is baffled how counsel can even suggest that

15 this paragraph is unconscionable.  It actually favors the

16 employee in that it allocates all arbitration fees to the

17 employer.  Although the employee is otherwise responsible for his

18 own attorney's fees and costs, it is standard for parties,

19 whether in arbitration or in litigation, to bear such expenses.

20 This provision is therefore not unconscionable.  <u>See</u> <u>Lim</u>, 8 F.4th

21 at 1002 ("substantive unconscionability exists when a fee-

22 shifting clause creates for employees a greater financial risk in

23 arbitrating claims than they would face if they were to litigate

24 those same claims in federal court") (internal quotation marks

25 omitted).

26         And contrary to the <u>Holley-Gallegly</u> court's assertion

27 that this provision leads to "large, fixed, forum costs" that

28 serve to deter employees from vindicating their rights, <u>see</u> 2022

                                10

1    WL 9959778, at *5 (citing Armendariz, 24 Cal. 4th at 1110), this

2    provision allocates all direct fees required to initiate and

3    carry out the arbitration process (i.e., forum costs) to the

4    employer (see Agreement at 3).

5            Further, the Agreement allows the arbitrator to award

6    costs and fees to a prevailing employee, as discussed above.  The

7    Agreement therefore does not limit plaintiff's ability to recover

8    attorneys' fees under the California Labor Code and is not

9    unconscionable on that basis.  Cf. Armendariz, 24 Cal. 4th at

10   103-04 (finding arbitration provision unconscionable because it

11   actually precluded remedies that were otherwise made available to

12   the plaintiff by statute); Serafin v. Balco Properties Ltd., LLC,

13   235 Cal. App. 4th 165, 183 (2015) (same); Serpa v. California

14   Sur. Investigations, Inc., 215 Cal. App. 4th 695, 709 (2013), as

15   modified (Apr. 19, 2013), as modified (Apr. 26, 2013) (same).

16           The next provision at issue states:

17       The Company agrees that if it prevails at the arbitration it
         shall not seek or pursue from you any of the costs it
18       incurred in connection with the arbitration.  This waiver
         shall not apply to other employees or supervisors who may be
19       individually accused in the grievance.

20   (Agreement at 4.)  Again, this provision is actually favorable to

21   plaintiff; and contrary to plaintiff's argument that the

22   provision somehow threatens the employee with burdensome costs,

23   it merely states that the waiver does not apply to individuals

24   who are not parties to the Agreement.  This provision is

25   therefore clearly not unconscionable, and the court cannot

26   understand how plaintiff could even argue that it is.

27           iv.  Discovery Limitations

28           The paragraph at issue provides in relevant part:

                                    11

1

2
     Except as provided in this paragraph, the arbitration shall
be conducted in accordance with [National Arbitration and
3
Mediation ("NAM")]'s then current rules for the resolution
of employment disputes . . . . It will not be necessary to
4
conduct pre-hearing discovery, but either you or the Company
may do so.  If either party elects to conduct prehearing
5
discovery, each party shall be allowed only up to five (5)
interrogatories, including subparts, five (5) requests for
6
production, including sub-parts, and two (2) depositions.
Electronic discovery will be limited to searches of e-mail
7
accounts of no more than two (2) addresses for a twelve
month period (or any shorter period for which e-mails are
8
retained in the ordinary course) and a maximum of five (5)
search terms or phrases will be permissible.

9
(<u>See</u> Agreement at 2-3.)

10
     The NAM Employment Rules and Procedures ("NAM Rules"),

11
incorporated by reference, provide for mandatory initial

12
disclosures of "all documents . . . upon which [the parties] rely

13
in support of their claims or defenses" within fourteen days of

14
the appointment of the arbitrator, with a continuing obligation

15
to supplement discovery.  (Ex. D to Ratica Decl. (Docket No. 19-3

16
at 28-44) at 6.)  The NAM Rules then numerically limit discovery

17
to 20 interrogatories, 30 requests for production, and 3

18
depositions.  (<u>Id.</u>)  A separate subsection of the NAM Rules

19
titled "Additional Discovery" states that the arbitrator may

20
permit discovery in excess of the enumerated limits upon a

21
showing of "substantial need."  (<u>Id.</u> at 7.)

22
     The paragraph at issue in the Agreement explicitly

23
provides limits on the number of interrogatories, requests for

24
production, depositions, and electronic discovery searches, which

25
would override the numerical limits provided by the NAM Rules.

26
(<u>See</u> Agreement at 3.)  Because the Agreement is silent on initial

27
disclosures and additional discovery, the remaining NAM

28
provisions--requiring initial disclosures and permitting

1  additional discovery upon a showing of substantial need--apply.

2  (See id.)

3          The court first notes that if plaintiff were allowed to

4  litigate his claims in this court, he could also expect

5  limitations to be placed upon discovery.  There is nothing

6  unusual or unfair about that.  That is what Rule 26(b) of the

7  Federal Rules of Civil Procedure is all about.

8          Discovery limitations are also common in arbitration

9  agreements.  Under Armendariz, parties in arbitration are

10  "entitled to 'adequate,' not unlimited, discovery."  Torrecillas

11  v. Fitness Int'l, LLC, 52 Cal. App. 5th 485, 498 (2020) (quoting

12  Armendariz, 24 Cal. 4th at 105-06).  "The fact that an

13  arbitration may limit a party's discovery rights is not

14  'substantive unconscionability.'  If it were, every arbitration

15  clause would be subject to an unconscionability challenge on that

16  ground."  Coast Plaza Doctors Hosp. v. Blue Cross of Cal., 83

17  Cal. App. 4th 677, 689-90 (2000)).

18          In evaluating discovery limitations in arbitration

19  agreements, California courts "balance the 'desirable simplicity'

20  of limiting discovery with employees' need for discovery

21  'sufficient to adequately arbitrate their statutory claim'" by

22  "look[ing] to the amount of discovery permitted, the standard for

23  obtaining additional discovery, and the evidence presented by

24  plaintiffs that the discovery limitations will prevent them from

25  adequately arbitrating their statutory claims."  Poublon, 846

26  F.3d at 1270 (quoting Armendariz, 24 Cal. 4th at 106).

27          As explained above, the instant agreement requires

28  initial disclosures with an ongoing duty to supplement discovery;

1    limits the parties to five interrogatories, five requests for

2    production, and two depositions; and permits additional discovery

3    upon a showing of substantial need.   Courts have determined that

4    comparable discovery provisions are not unconscionable.   See,

5    e.g., Poublon, 846 F.3d at 1271 (discovery provision that

6    required disclosure of relevant documents, limited parties to

7    three depositions with zero requests for production and

8    interrogatories, and permitted additional discovery upon showing

9    of "good cause" was not unconscionable); Torrecillas, 52 Cal.

10   App. 5th at 497-98 (discovery provision that required initial

11   disclosures, limited parties to five depositions, twenty

12   interrogatories, and zero requests for documents, and permitted

13   additional discovery upon showing of "substantial need" was not

14   unconscionable); Sanchez v. Carmax Auto Superstores Cal., LLC,

15   224 Cal. App. 4th 398, 404 (2014) (discovery provision that

16   required initial disclosure of relevant documents with a

17   continuing obligation to supplement discovery, limited parties to

18   three depositions, 20 interrogatories, and zero requests for

19   production, and permitted additional discovery on showing of

20   "substantial need" was not unconscionable).   Cf. Fitz v. NCR

21   Corp., 118 Cal. App. 4th 702, 716 (2004) (discovery limitation

22   was unconscionable because it did not permit additional discovery

23   unless the parties could "demonstrate that a fair hearing would

24   be impossible without additional discovery") (emphasis in

25   original).

26            Plaintiff has not "establish[ed] as a factual matter

27   that the discovery provisions [a]re inadequate to vindicate [his]

28   statutory rights," which further weighs against finding the

                                  14

discovery provisions unconscionable.  See Baxter v. Genworth N. Am. Corp., 16 Cal. App. 5th 713, 729 (2017) (citing Sanchez, 224 Cal. App. 4th at 404-05, and Mercuro v. Superior Ct., 96 Cal. App. 4th 167, 183 (2002)); see also Poublon, 846 F.3d at 1271. The discovery provisions at issue are therefore not unconscionable.

> v.   Requirement that Plaintiff Decide Whether to Be Represented by Counsel At Beginning of Arbitration

The provision at issue states:

> If you initiate the arbitration, the decision whether to use a lawyer must be made at the time that arbitration is initiated.  If the Company initiates the arbitration, your decision whether to use a lawyer must be made within twenty (20) calendar days after your receipt of notice that the Company has initiated arbitration.

(Agreement at 3.)

Plaintiff argues that this provision unconscionably limits plaintiff's right to representation (but cites no on-point authority).  To the contrary, the Agreement does not limit plaintiff's ability to be represented by counsel of his own choosing, but rather only requires plaintiff to decide whether to be represented by counsel towards the beginning of the arbitration process.  (Id.)  And as defendant points out, this provision also states that "if you elect not to use a lawyer at arbitration, then the Company will not use a lawyer either." (Id.)  This portion of the Agreement seems intended to ensure that neither party has the unfair advantage of being represented by counsel while the other is not.

While plaintiff argues that the time limitation on deciding whether to be represented is unconscionable, he has not identified (nor has the court found) any authority supporting

15

1   that proposition.  To the contrary, the lone case cited by

2   plaintiff provides that "[b]ecause the rules of evidence and

3   judicial procedure do not apply to arbitration proceedings absent

4   the parties' agreement, arbitration procedures violate the common

5   law right to a fair hearing only in the clearest of cases, i.e.,

6   when the applicable procedures essentially preclude the

7   possibility of a fair hearing."  Hoso Foods, Inc. v. Columbus

8   Club, Inc., 190 Cal. App. 4th 881, 888-89 (2010) (internal

9   quotation marks and alteration omitted).

10          The requirement that the plaintiff elect whether to be

11   represented near the beginning of the arbitration process clearly

12   does not preclude the possibility of a fair hearing.  The court

13   thus sees no reason to conclude that this provision is

14   unconscionable.

15          vi.  Choice of Law Provision

16          The choice of law provision states:

17   > The law of the jurisdiction in which you are primarily
     > employed will govern the substance of your grievance.
18   > However, all disputes regarding the enforcement of this
     > Agreement, any of the provisions of this Agreement or
19   > whether a party's claim is subject to this Agreement shall
     > be determined in accordance with the law of the State of
20   > Delaware.

21   (Agreement at 4.)

22          California has a "strong policy favoring enforcement of

23   [choice of law] provisions."  Nedlloyd Lines B.V. v. Superior

24   Ct., 3 Cal. 4th 459, 464-65 (1992).  Under California law, courts

25   determining the enforceability of a choice of law provision first

26   ask whether "(1) the chosen state has a substantial relationship

27   to the parties or their transaction," or "(2) there is any other

28   reasonable basis for the parties' choice of law."  Id. at 466.

16

1  "If neither of these tests is met, that is the end of the

2  inquiry, and the court need not enforce the parties' choice of

3  law."  Id.  Where either test is met, the court proceeds to the

4  second step and "determine[s] whether the chosen state's law is

5  contrary to the fundamental policy of California."  Id.  If there

6  is no conflict of this nature, the choice of law provision must

7  be enforced.  Id.

8          Here, there is both a substantial relationship with

9  Delaware and a reasonable basis for the choice of Delaware law,

10 as defendant is incorporated in that state.  See Consul Ltd. v.

11 Solide Enterprises, Inc., 802 F.2d 1143, 1147 (9th Cir. 1986)

12 ("If one of the parties resides in the chosen state, the parties

13 have a reasonable basis for their choice."); Nedlloyd, 3 Cal. 4th

14 at 467 (a "substantial relationship [is] present when 'one of the

15 parties is domiciled' in the chosen state") (quoting Restatement

16 (Second) of Conflict of Laws § 187, cmt. F (Am. Law Inst. 1971)).

17         The inquiry next turns to whether Delaware law

18 contradicts a fundamental policy of California.  Only disputes

19 regarding the enforceability of the Agreement will be governed by

20 Delaware law.  (Agreement at 4.)  Accordingly, only California

21 policies relating to contract interpretation and arbitration are

22 relevant here.  There does not appear to be any relevant conflict

23 between California and Delaware law, as both states have strong

24 policies favoring arbitration.  See Armendariz, 24 Cal. 4th at 97

25 ("California law, like federal law, favors enforcement of valid

26 arbitration agreements."); Kuhn Const., Inc. v. Diamond State

27 Port Corp., 990 A.2d 393, 396 (Del. 2010) ("The public policy of

28 Delaware favors arbitration.").  While plaintiff points out that

1  the Armendariz decision does not apply in Delaware, he fails to

2  identify any provision of Delaware law that is in tension with a

3  fundamental California policy.  The court therefore declines to

4  find the choice of law provision unenforceable.

5       B.   Plaintiff Does Not Specifically Challenge the
              Delegation Clause

6

7       Most importantly here, even if the unconscionability

8  arguments discussed above had merit, the court would nonetheless

9  be required to compel arbitration based on the delegation clause.

10 "Although gateway issues of arbitrability presumptively are

11 reserved for the court, the parties may agree to delegate them to

12 the arbitrator."  Momot v. Mastro, 652 F.3d 982, 987 (9th Cir.

13 2011) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63,

14 68-70 (2010)).  Courts may "assume that the parties agreed to

15 arbitrate arbitrability" only if "there is clear and unmistakable

16 evidence that they did so."  Henry Schein, Inc. v. Archer & White

17 Sales, Inc., 139 S. Ct. 524, 531 (2019) (quoting First Options of

18 Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  An "express

19 agreement" to arbitrate arbitrability, evinced by a contract's

20 "language[ ] delegating to the arbitrators the authority to

21 determine the validity or application of any of the provisions of

22 the arbitration clause," constitutes clear and unmistakable

23 evidence.  Momot, 652 F.3d at 988 (citations omitted).

24       Where an express delegation provision exists, unless a

25 party opposing enforcement of the agreement "challenge[s] the

26 delegation provision specifically, [courts] must treat it as

27 valid . . ., leaving any challenge to the validity of the

28 Agreement as a whole for the arbitrator."  Rent-A-Center, 561

1   U.S. at 72 (emphasis added).  A party may challenge a delegation

2   provision using "generally applicable contract defenses,"

3   including unconscionability.  <u>Concepcion</u>, 563 U.S. at 339.  <u>See</u>

4   <u>also</u> <u>Brennan v. Opus Bank</u>, 796 F.3d 1125, 1133 (9th Cir. 2015)

5   (party challenging arbitration agreement on unconscionability

6   grounds must do so specifically with respect to delegation

7   provision to resist enforcement thereof) (citing <u>Rent-A-Center</u>,

8   561 U.S. at 73-75).[2]

9          Under <u>Rent-A-Center</u>, arguments that an agreement "<u>as a</u>

10  <u>whole</u> is unconscionable under state law" are not relevant to a

11  court's determination of whether a delegation clause is

12  enforceable.  <u>See</u> 561 U.S. at 75 (emphasis in original).

13  Plaintiff's arguments concerning the waiver of jury trial and

14  limitation on the arbitrator's ability to award fees and costs

15  are inapposite, as arguments concerning the unfairness of

16  provisions other than the delegation clause are not relevant to

17  the court's determination of the delegation clause's

18  enforceability.  <u>See</u> <u>id.</u> at 73 (rejecting argument that

19  agreement's coverage was one-sided as it required arbitration of

20  only employee's claims, because that argument "clearly did not go

21  to the validity of the delegation provision").

22          The remaining arguments concerning allocation of fees

23  _____

24          [2]    Some California courts have taken a similar approach to
    determining the enforceability of delegation clauses.  <u>See</u> <u>Malone</u>
25  <u>v. Superior Ct.</u>, 226 Cal. App. 4th 1551, 1559 (2014) (citing
    <u>Bruni v. Didion</u>, 160 Cal. App. 4th 1272, 1287 (2008)) ("courts
26  have treated the delegation clause as a separate agreement to
    arbitrate solely the issues of enforceability . . . thus, it has
27  been held that whether the arbitration agreement as a whole is
    ultimately held to be unenforceable will have no bearing on the
28  enforcement of the delegation clause itself").

                                  19

1  and costs, discovery limits, and obtaining counsel likewise do

2  not go to the court's determination of the delegation clause's

3  enforceability.  While arbitration procedures--for example fee-

4  splitting arrangements or limitations on discovery--may apply

5  equally to the delegation clause, plaintiff must argue that those

6  provisions are unconscionable <u>as applied to the delegation</u>

7  <u>clause</u>.  <u>Id.</u> at 73-75; <u>see also</u> <u>Lim</u>, 8 F.4th at 1003 (holding

8  that delegation clause was unenforceable because cost-splitting,

9  fee-shifting, and venue selection provisions were unconscionable

10  "as applied to the delegation clause").

11        Plaintiff only makes one argument that is somewhat

12  specific to the delegation clause.  He contends that because the

13  delegation clause is "embedded in the same paragraph" as the

14  choice of law and waiver of jury trial provisions (which he

15  argues are unconscionable), the delegation clause is also

16  unconscionable.  (<u>See</u> Pl.'s Opp'n at 18.)  This argument fails

17  for the same reasons discussed above, as it goes to the

18  substantive unconscionability of provisions other than the

19  delegation clause.  <u>See</u> <u>Rent-A-Center</u>, 561 U.S. at 72.

20        This argument also fails on the merits.  Even if the

21  choice of law and waiver of jury trial provisions were

22  substantively unconscionable, it is not clear that their

23  proximity alone can render the delegation clause unenforceable.

24  <u>See</u> <u>Nalbandyan v. CitiBank, N.A.</u>, No. LA-cv-15-09302 JAK KK, 2022

25  WL 2783839, at *10 (C.D. Cal. June 13, 2022) (explaining that

26  merely being in the same paragraph as an unconscionable burden-

27  shifting provision did not render the damage limitation provision

28  at issue unconscionable); <u>Lim v. Transforce, Inc.</u>, No. LA-19-

1  04390 JAK AGR, 2020 WL 10728663, at *11 (C.D. Cal. Apr. 27,

2  2020), aff'd sub nom. Lim, 8 F.4th 992 (9th Cir. 2021) (stating

3  that different substantive unconscionability analyses applied to

4  two provisions in the same paragraph).

5       Plaintiff only cites Holley-Gallegly for the

6  proposition that being in the same paragraph as a purportedly

7  unconscionable waiver of jury trial renders the delegation clause

8  unconscionable.  (Pl.'s Opp'n at 18.)  The Holley-Gallegly court,

9  however, cited no authority for that proposition and focused its

10  analysis exclusively on the waiver of jury trial provision.  See

11  2022 WL 9959778, at *4-5.  The court merely pointed out that

12  "[t]he delegation clause is not an independent paragraph within

13  the Agreement; it is the second sentence of a paragraph titled

14  'Applicable Law and Construction/Waiver of Jury Trial,'" but

15  provided no explanation of the relevance of this fact.  See id.

16  at *4.

17       With respect to the choice of law provision, as the

18  Chandler court noted, multiple California courts in the Ninth

19  Circuit have enforced delegation clauses with similar choice of

20  law provisions.  See Chandler v. TA Operating LLC, No. 2:20-cv-

21  2091 TLN DMC, 2022 WL 597581, at *2 (E.D. Cal. Feb. 28, 2022).[3]

22  ───────────────

23       [3]   The Chandler court cited two cases: Norris v. Aon PLC,
   No. 21-cv-00932 CRB, 2021 WL 1238303, at *7 (N.D. Cal. Apr. 2,

24  2021), reconsideration denied, No. 21-cv-00932 CRB, 2021 WL
   1873098 (N.D. Cal. May 10, 2021) (holding choice of law

25  provisions were "not grounds for invalidating the delegation
   clause" because "the delegation clause is an independent

26  agreement to have an arbitrator decide gateway arbitrability
   issues, separate from the relevant choice-of-law provisions");

27  and Wainwright v. Melaluca, Inc., No. 2:19-cv-02330 JAM DB, 2020
   WL 417546, at *2-4 (E.D. Cal. Jan. 27, 2020), aff'd, 844 F. App'x

28  958 (9th Cir. 2021) (analyzing choice of law provision and

1   And as discussed above, the court concludes that the choice of

2   law provision here is not unenforceable, and therefore does not

3   affect the delegation clause's enforceability.

4          Thus, even though the court rejects plaintiff's

5   arguments concerning the Agreement's substantive

6   unconscionability, it must grant the motion to compel for a more

7   fundamental reason:  plaintiff has failed to adequately challenge

8   the delegation clause <u>specifically</u>, and the court does not see a

9   reason to conclude that the delegation clause is unconscionable.

10  <u>See</u> <u>Rent-A-Center</u>, 561 U.S. at 73-75.

11         Having found that the delegation clause is enforceable,

12  the court will order the parties to arbitrate their dispute--

13  including gateway issues of arbitrability--in accordance with

14  their agreement to do so.  <u>See</u> <u>Stolt-Nielsen</u>, 559 U.S. at 682;

15  <u>Dean Witter Reynolds</u>, 470 U.S. at 218; <u>Momot</u>, 652 F.3d at 987-88.

16         The court will not, however, dismiss the action as

17  defendant requests.  Plaintiff requested a stay in lieu of

18  dismissal (Pl.'s Opp'n at 2), a request the court must honor.

19  <u>See</u> 9 U.S.C. § 3 (where the court is "satisfied that the issue

20  delegation clause separately and upholding delegation clause
    because the "contract clearly and unmistakably delegated
21  questions related to the scope and enforceability of the
    arbitration agreement to an arbitrator").
22         Multiple other decisions have similarly enforced
23  delegation clauses in arbitration agreements with choice of law
    provisions.  <u>See, e.g.</u>, <u>Ratajesak v. New Prime, Inc.</u>, No. SA cv-
24  18-9396 DOC AGR, 2019 WL 1771659, at *6-7 (C.D. Cal. Mar. 20,
    2019) (holding that choice of law provision did not render
25  delegation clause unconscionable because it did not prevent
    arbitrator from determining enforceability of the choice of law
26  provision itself); <u>Gountoumas v. Giaran, Inc.</u>, No. cv-18-7720 JFW
    PJW, 2018 WL 6930761, at *8 (C.D. Cal. Nov. 21, 2018) (holding
27  that presence of foreign-state choice of law clause did not
    render delegation clause unconscionable).
28

1  involved in [a] suit or proceeding is referable to arbitration

2  under [an arbitration] agreement," it "shall on application of

3  one of the parties stay the trial of the action until such

4  arbitration has been had in accordance with the terms of the

5  agreement").  Accordingly, the court will stay the action pending

6  arbitration.

7          IT IS THEREFORE ORDERED that defendant's motion to

8  compel arbitration (Docket No. 19-1) be, and the same hereby is,

9  GRANTED.[4]  IT IS FURTHER ORDERED that this case is STAYED pending

10 arbitration.

11         The Clerk shall close this file administratively,

12 subject to it being reopened upon the application of either party

13 after arbitration has been fully completed.

14 Dated:  January 12, 2023

15                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24 _____

25        [4]   To the extent that the parties request that the court
   take judicial notice of the existence of the Holley-Gallegly
26 order (Docket No. 21-1) and defendant's notice of appeal of the
   Holley-Gallegly order (Docket No. 22), the requests are GRANTED.
27 See Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,
   136 F.3d 1360, 1364 (9th Cir. 1998).  However, those documents do
28 not ultimately affect the court's conclusions.

                                23